UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAMON DIAZ and CANDACE AGATE,     Plaintiffs, | : : | |
| | : | 19-cv-1664-JMY |
| v. | : : | |
| BTG INTERNATIONAL INC., et al.     Defendants. | : : | |

MEMORANDUM

**YOUNGE, J.**                                                                                                June 14, 2021

**I.     INTRODUCTION:**

Currently before the Court are Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF No. 46.), and Motion for an Award of Attorneys' Fees and Reimbursement of Expenses and Lead Plaintiff Case Contribution Award. (ECF No. 48.) After a Final Fairness Hearing held on January 21, 2021 and a review of both motions, the Court now grants both motions, and will enter two Orders consistent with this Memorandum.

**II.     FACTS AND PROCEDURE:**

The two named Plaintiffs are former employees of BTG International, Inc. who participated in BTG International, Inc. Profit Sharing 401(k) Plan (hereinafter referred to as "the Plan"). The Plaintiffs represent a class comprised of roughly 1,555 Settlement Class members who participated in the Plan between April 17, 2013 and November 20, 2018.[1] (Transcript Final Fairness Hearing page 10 (1/21/21).) Generally, participants in the Plan were either former or current employees of BTG International, Inc. and/or their beneficiaries who held retirement accounts with the Plan. (Amended Complaint ¶ 10, 25, 141.)

BTG International, Inc. is a specialty pharmaceutical and interventional medicine company with its principal place of business at 300 Four Falls Corp Center, Suite 300, 300

Conshohocken State Road, West Conshohocken, Pennsylvania. (*Id.* ¶ 17.) BTG International, Inc. maintained a 401(k)-type retirement plan for its employees referred to in this litigation as the Plan. (Amended Complaint ¶ 19.) The Plan was administered by BTG International Inc. Profit Advisory Committee (hereinafter referred to as "the Committee") which oversaw the management of the Plan and had decision making authority. (*Id.*)

In the Complaint, Plaintiffs allege that Defendants breached their fiduciary duties in violation of ERISA § 404(a)(1)(A)-(B) and 29 U.S.C. § 1104(a)(1)(A)-(B). (*Id.* ¶¶ 147-156.) Specifically, they allege that the Plan used John Hancock USA for administrative/record keeping purposes and that it charged excessive fees. (*Id.* ¶¶ 40-42.) They also allege that John Hancock USA provided investment options that were imprudent because of high fees charged for the investment vehicles. (*Id.* ¶¶ 40-43.) Plaintiffs allege that the Committee intentionally or imprudently kept the Plan in this excessive recordkeeping and administrative fee arrangement and continued to retain the services of John Hancock USA despite the fact that it charged excessive fees between the years of April 17, 2013 to November 20, 2018. (*Id.* ¶¶ 78-80, 91, 115.) Plaintiffs allege that the Plan breached its fiduciary obligations to ensure that John Hancock USA's compensation was no more than reasonable when it overpaid for advisory and administrative services. (*Id.* ¶¶ 36-38.)

In their Motion for Final Approval of Class Action Settlement, the Plaintiffs define the Settlement Class as:

> All Persons (except Defendants and their Immediate Family Members) who are or were participants in or beneficiaries (including alternate payees) of the BTG International, Inc., Profit Sharing 401(k) Plan at any time between April 17, 2013, and November 20, 2018.

(Judgment Approving Class Action Settlement ¶ 2, ECF No. 46-1.)

John Hancock USA ceased involvement with the Plan after November 20, 2018.

(Amended Complaint. ¶ 10.)  In his Declaration, counsel for the Plaintiff, Mark K. Gyandoh, Esquire, estimates Defendants' possible maximum exposure at $1.5 million.  He wrote:

> After reviewing all of the relevant information Plaintiffs determined maximum potential damages to the BTG international, Inc., Profit Sharing 401(k) Plan ("Plan") of $1.5 million.  This figure is based in large part on what the Plan would have earned if it were invested in the best performing funds in the marketplace that were available instead of being invested in the funds [provided by John Handcock] during the Class Period.

(Declaration Gyandoh, ECF No. 44-2.)  During the Final Fairness Hearing, Counsel represented that based on the method for calculating damages ultimately selected by the Court, the damage award could come in as low as $750,000.00 assuming that Plaintiffs were able to prevail on liability.  (Transcript Final Fairness Hearing at page 14-15 (1/21/21).)

The case ultimately settled for $560,000.00.  (Gyandoh Declaration ¶¶ 12-13.)  Under the terms of the Settlement, Defendants will contribute $560,000.00 to the Settlement Fund.  (Settlement Agreement § 7.2, ECF No. 44-3.)  The Settlement Fund will then be used to pay the costs to administer the Settlement, to provide notice to Settlement Class members, and to pay attorneys' fees, expenses, and Case Contribution Awards.  (*Id.* §§ 8.1.1, 8.1.4, 8.2.1, 8.2.2, 8.2.3.)  The Settlement Fund, up to the amount of $25,000, will also be approved to be used to pay the costs of the Independent Fiduciary, in this instance Newport Trust Company.  (Statement of Independent Fiduciary, ECF No. 52-2.)  Newport Trust Company, acting as an Independent Fiduciary, provided a written statement that the settlement amount was fair and reasonable after a review of the Settlement Agreement and Plan of Allocation.  (*Id.*)  Defendants will be responsible for any fees of the Independent Fiduciary in excess of $25,000.00.  (*Id.* § 8.1.3.)

After payment of costs, expenses, and fees, the Settlement Fund will then be distributed to the Settlement Class on a *pro rata* basis.  (Plan of Allocation § C, ECF No. 44-3.)  No payment to any Settlement Class member shall be smaller than ten dollars ($10.00).  (Plan of

Allocation § D, ECF No. 44-3.) Any Settlement Class Member whose payment pursuant to Section C of the Settlement Agreement is less than ten dollars ($10.00) shall receive no allocation from the Settlement Fund. (*Id.*)

### III. DISCUSSION:

To approve the settlement, the Court must first certify the Settlement Class and determine that Notice to the Class was appropriate and in accordance with the preliminary order approving class action settlement. The Court must then determine whether the settlement is fair, reasonable and adequate. The Court must also appoint Class Counsel to administer the settlement fund and approve compensation for Class Counsel and the named Plaintiffs as class representatives.

### A. Class Certification:

Before the Court can finally approve the settlement agreement, Plaintiffs must demonstrate that the Settlement Class meets the requirements of Federal Rule of Civil Procedure 23. Specifically, the class must meet all of the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) and also fit into one of the three categories of class actions set forth in Rule 23(b). In this instance, the Plaintiffs' Settlement Class meets the requirement of Rule 23(a) and Rule 23(b).

#### 1. The Proposed Class Meets the Requirements of Rule 23(a):

The Court finds that the Settlement Class meets all of the Requirements of Rule 23(a).

**Numerosity:**

To establish numerosity, the Court must find that the proposed class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). The Parties in this case have established that the proposed class consists of 1,555 employees of BTG International Inc. and their beneficiaries who had invested in the Plan between April 17, 2013 and November 20,

2018.² This class size is sufficiently large that joinder of all members would be impracticable. *Steward v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001) (stating in dicta, "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."). Accordingly, this class satisfies the numerosity requirement.

**Commonality:**

Commonality requires the existence of at least one question of law and/or fact common to the class members. *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127-128 (3d Cir. 2018). Generally, this requirement is satisfied when the defendant has engaged in the same conduct towards members of the proposed class. *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 307-308 (E.D. Pa. June 26, 2012). In this case, Plaintiffs allege breach of a fiduciary duty in an ERISA action, it is alleged that the fund breached fiduciary duties to the Settlement Class. Specifically, Plaintiffs allege that the Plan used John Hancock USA for administrative/record keeping and investment services despite the fact that John Hancock USA charged excessive fees. Plaintiffs further alleged that the investment vehicles provided by John Hancock were less profitable than other products that were available. Therefore, the Court finds questions of fact and law common to the Settlement Class.

**Typicality:**

To establish typicality, the claims of the named plaintiffs must be typical of the claims of the class. The Court must discern whether the named Plaintiffs and the other members of the class are challenging the same unlawful conduct. The "typicality requirement [contained in Rule 23(a)(3)] is designed to align the interests of the class and the class representative so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Warfarin*

*Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004); *Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) ("[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.").

Here Plaintiffs were employees of BTG International Inc. who invested in the Plan, or beneficiaries of employees who invested in the Plan. They allege that through act or omission, the Plan breached fiduciary obligations pursuant to ERISA when it continued to retain the services of John Hancock USA. All claims arise from the same events or course of conduct, and all class members, including the Named Plaintiffs, rely upon the same legal theories to establish liability. Accordingly, the proposed class satisfies the typicality requirement.

**Adequacy of Representation:**

"The adequacy requirement 'encompasses two distinct inquiries designed to protect the interests of absentee class members: 'it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class.'" *Ripley*, 287 F.R.D. at 309; *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181-182 (3d Cir. 2012). This test "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006). Here both prongs of the adequacy test are met.

First, there is no apparent conflict between the interests of the Named Plaintiffs and the claims asserted on behalf of the Settlement Class. Therefore, the Court finds that the Named Plaintiffs adequately represent the interests of the Settlement Class. Named Plaintiffs have no interests antagonistic to those of the absent Settlement Class Members as demonstrated by the

fact that, ultimately, Named Plaintiffs seek to establish that Defendants breached their fiduciary duties by continuing to offer inferior investment alternatives and by paying excessive recordkeeping fees which caused the Plan and Settlement Class an economic loss. As such, each member of the Settlement Class, just like the Named Plaintiffs, has a similar interest in recovering losses suffered by the Plan as a result of the alleged wrongful conduct.

As will be discussed in more detail below, Plaintiffs' Counsel have represented to the Court that they possess extensive experience in class action litigation and have successfully reached an agreement to settle this matter. Therefore, the second prong of the adequacy analysis has been satisfied. Attorneys for the Settlement Class are qualified to represent the Settlement Class, and their performance is and was adequate to represent the interests of the Settlement Class.

### 2. Class Certification is Appropriate Under Rule 23(b)(1)(B):

The Court finds that the class can be certified under 23(b)(1)(B). Under this provision, class certification is appropriate when adjudication of separate, individual actions might be dispositive of the interests of class members who are not parties to the action. Rule 23(b)(1)(B) reads in relevant part:

> (1) prosecuting of separate action by or against individual class members would create a risk of: (1) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interest of the other members with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

When a breach of fiduciary duty is at issue, any individual adjudication regarding the breach would necessarily affect the interests of others. Here, Plaintiffs allege that the Plan

breached fiduciary duties under ERISA owed to employees of BTG International, Inc. who invested in the Plan. Any decision with respect to one class member would necessarily affect the interests of the other Settlement Class members. Therefore, it is appropriate to certify the class pursuant to Rule 23(b)(1)(B). *Mehling v. New York Life Ins. Co.*, No. 99-5417, 246 F.R.D. 467, 476 (E.D. Pa. Oct. 25, 2007); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397 (E.D. Pa. 2001) (finding Rule 23(b)(1)(B) certification appropriate because "the plaintiffs claim that the defendants have breached their fiduciary duties under ERISA. Any decision regarding whether the defendants breached their fiduciary duties would necessarily affect the interests of other participants."); *In re IKON Office Solutions, Inc. Sec. Litig.*, No. 00-0087, 191 F.R.D. 457, 466 (E.D. Pa. 2000) (certifying a class pursuant to Rule 23(b)(1) since, "given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief"); *Kane v. United Indep. Union Welfare Fund*, No. 97-1505, 1998 U.S. Dist. LEXIS 1965, *25 (E.D. Pa. Feb. 23, 1998) (certifying an ERISA class action pursuant to 23(b)(1)(B) because an action brought to remedy breaches of fiduciary duty affects all plan participants); *Pfeifer v. Wawa Inc.*, No. 16-0497, 2018 U.S. Dist. LEXIS 81759, 13 (E.D. Pa. Aug 31, 2018).

The Court therefore certifies the class pursuant to Rule 23(b)(1)(B).

**B.     Notice to the Settlement Class was Appropriate and in Accordance with the Order Preliminarily Approving Class Action Settlement:**

Notice to the Settlement Class was appropriate and in accordance with the Order entered by this Court that Preliminarily Approved the Class Action Settlement. (ECF No. 45.) Class Counsel retained the services of JND Legal Administration, LLC, to serve as settlement and notice administrator. (Keough Declaration, ECF No. 50-3.) JND Legal Administration mailed via U.S. Postal Service over 1,555 Class Notices to Settlement Class Members of which only 48

8

were returned undelivered.  (*Id.*)  Notice was also posted on a designed website www.BTGInternationalERISASettlement.com.  (Keough Declaration ¶ 11.)

      C.     **Fairness of the Settlement Agreement:**

This Court has found that the Settlement Class meets the requirements of Federal Rule of Civil Procedure 23(a) and 23(b).  This Court has also found that the requirements for notice to the Settlement Class have been met.  The terms of the settlement agreement itself must be reviewed to determine if the settlement is "fair, reasonable and, adequate."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995) (citing Fed. R. Civ. P. 23(e)(2).)[3]  The Court must also keep in mind that "the law favors settlements, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding litigation."  *Id.* at 784.  To make this determination, courts in this circuit employ a rigorous nine factor test set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d. Cir. 1975), which requires analysis of the following:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risk of litigation.

*Girsh*, 521 F.2d at 157.[4]

      1.     **The Complexity, Expense and Likely Duration of Litigation:**

"The first factor 'captures the probable costs, in both time and money, of continued litigation.'"  *In re NFL Players Concussion Inj. Litig.*, 821 F.3d 410, 437 (3d Cir. 2016) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535-36); see also *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 812.  Approval of the Settlement Agreement makes

9

sense under the circumstances because this litigation carries a high probability of high costs in both time and money if it is continued until final disposition on its merits. This settlement occurred while this action was in its infancy which significantly reduced the expense to both Parties.

    2.    **Reaction of the Class to the Settlement:**

The named Plaintiffs mailed notices to all class members, advising them of the terms of the settlement agreement, proposed attorneys' fees and special awards, and their right to file written objections prior to the Final Fairness Hearing. (Keough Declaration ¶ 3-4.) Plaintiffs sent 1,555 notices, and only 48 notices were returned marked as undeliverable. (*Id.*) Neither the Plaintiffs nor the Court received any objections to this mandatory class action settlement. (Transcript Final Fairness Hearing page 11 (1/21/21).) These facts support approval of the settlement.

    3.    **The Stage of the Proceedings and the Amount of Discovery Completed:**

Counsel represented that discovery encompassed "informal" discovery, including discovery and analysis from third parties, such as Plaintiffs' consulting experts. (Brief in Support page 11, ECF No. 47.) The early disposition of this matter supports approval of settlement because this action has settled while it is in its infancy which significantly reduced the expense to both Parties.

    4-5.    **The Risk of Establish Liability and Damages:**

"By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 814. This inquiry "survey[s] the possible risks of litigation in order to balance the

likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 319 (3d Cir. 1998). To determine if the settlement offer is fair, reasonable and adequate the likelihood of establishing liability must be evaluated in conjunction with the ability to obtain a damage award in excess of the settlement offer—in this case an amount in excess of $560,000.00. *In re Cendant Corp. Litig.*, 264 F.3d 201, 237-239 (3d Cir. 2001).

Plaintiffs allege breach of fiduciary duties under ERISA in the context of a complex investment arrangement between themselves and the Plan. Litigating this matter to verdict would have required a finder of fact to make credibility determinations on testimony offered by both fact and expert witnesses. If tried to final judgment, this action would have required expert testimony including expert testimony on damages that would have involved complex mathematical calculations and projections. Plaintiffs faced the risk of an adverse verdict if this action had been litigated to conclusion. Plaintiffs also faced the risk of a low damage award after substantial investment of both time and money. Therefore, the settlement reached makes sense under these circumstances.

6. **The Risk of Maintaining the Class Action Through Trial:**

A review of the docket in this matter illustrates that Plaintiffs have not filed a Motion for Class Certification. At the settlement stage, the Court finds the proposed Settlement Class appropriate and approves the matter for class action status. However, the approval of a settlement class for the purpose of an uncontested settlement agreement after notice to all interested parties does not guarantee that the same result would have been reached if the Court had to decide a contested motion for class certification. Had this case proceeded to the class certification stage, Plaintiffs faced the possibility that their motion for class certification might

not have been granted or that the class size would have been reduced.

### 7. The Ability of Defendants to Withstand Greater Judgment:

The Defendants could most likely withstand a judgment in the amount of $1.5 million dollars which is the outside limit of liability as estimated by Plaintiffs' Counsel. However, the ability of the Defendants to withstand a greater judgment is not a significant factor in the evaluation of whether the settlement if fair, reasonable, and adequate in this instance. Other factors in the *Girsh* analysis far outweigh the question of whether Defendants can withstand a greater judgment.

### 8-9. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risk of Litigation:

The test for whether settlement is reasonable in light of the best possible recovery "test[s] two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re Flonase Antitrust Litig.*, No. 08-cv-3149, 951 F. Supp. 2d 739, 745 (E.D. Pa. June 14, 2013) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 538). As the Third Circuit has explained, the Court must "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 806; *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

In his Declaration, Counsel for the Plaintiff, Mark K. Gyandoh, Esquire, estimates Defendants' maximum possible exposure at $1.5 million. (Gyandoh Declaration.) During the Final Fairness Hearing, Counsel represented that based on the method for calculating damages ultimately selected by the Court, the award could come in as low as $750,000.00 assuming that Plaintiffs prevailed on liability. (Transcript Final Fairness Hearing at page 14-15 (1/21/21). The

case ultimately settled for $560,000.00. (*Id.* ¶¶ 12-13.) In light of the complexity of the case and the potential obstacles to establishing liability and damages, the settlement is reasonable.

        **D.    Capozzi Adler, P.C. As Class Counsel Adequately Represents the Settlement Class:**

Federal Rule 23(g) specifies that, unless a statute provides otherwise, a court that certifies a class must appoint Class Counsel, and that an attorney appointed to serve as Class Counsel "must 'fairly and adequately represent the interests of the class.'" *Donovan v. St. Joseph County Sheriff*, No. 11-cv-0133, 2012 U.S. Dist. LEXIS 63847, 26 (N.D. Ind. May 3, 2012) (quoting Fed. R. Civ. P. 23(g)(4)). Rule 23(g) directs consideration of: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *In re: Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 262 (E.D. Pa. 2012) (citing Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv)).

Mark K. Gyandoh, Esq. and Donald R. Reavey, Esq. of Capozzi Adler, P.C., both represented that they possess prior experience litigating similar ERISA class actions and complex litigation. They appear well-qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement. Mr. Gyandoh is Chair of the Fiduciary Practice Group at Capozzi Adler, P.C., and he represented that he is currently serving as Lead or Co-Lead Counsel in numerous breach of fiduciary duty class actions in this District and across the nation. (Gyandoh Declaration ¶ 3.) Mr. Reavey represented that he had been specializing in the field of ERISA litigation for over four years and had drafted an estimated 48 complaints. (Transcript Final Fairness Hearing page 30-31 (1/21.21).)

13

Therefore, the Court appoints Mr. Gyandoh, Mr. Reavey and the law firm of Capozzi Adler, P.C. to act as Class Counsel.

### E. Motion for Awards of Attorney's Fees, Costs and Class Representative Awards:

#### 1. Award of Attorneys' Fees and Expenses:

Plaintiffs' attorneys in a class action may petition the court for compensation for any award to the class resulting from the attorneys' efforts. *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980). Under Fed. R. Civ. P. 23, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the Parties' agreement." Fed. R. Civ. P. 23(h). Courts utilize two main approaches in analyzing a request for attorneys' fees by class counsel: the "percentage of the fund" method and the "lodestar" method. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). Under the percentage-of-recovery method, "the court awards counsel a percentage of the amount recovered for the class in order to reward counsel for their success or penalize them for their failure." *Local 56, United Food and Commer. Workers Union v. Campbell Soup Co.*, 954 F. Supp. 1000, 1003 (D. N.J. 1997) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984)). The lodestar method, on the other hand, "calculates fees by multiplying the number of hours expended by some hourly rate appropriate for the region and for the experience of the lawyer." *In re GMC. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, n. 37 (3d Cir. 1995). The Third Circuit favors the percentage-of-recovery method in common fund cases. *Sullivan*, 667 F.3d at 330; *Local 56, United Food and Commer. Workers Union v. Campbell Soup Co.,* 954 F. Supp. at 1003.

At inception of this litigation, Counsel faced the very real prospect of obtaining no financial recovery for their clients; therefore, the contingency arraignment was appropriate. Counsel drafted a Complaint, responded to motion to dismiss, reviewed discovery and negotiated

14

a class action settlement. Counsel then filed motions in connection with preliminary and final approval of class action settlement. Mr. Gyandoh attested to expending a combined total of 324.90 hours on this case. Therefore, the Court will approve the request for an award of attorneys' fees equal to 33.1/3% percent of the $560,000.00 settlement fund in an amount equal to $186,648.00. The Court will also approve the request for litigation expenses in the amount of $2,347.72, to be paid from the Settlement Fund.

It is appropriate to use the lodestar method "'to cross-check the reasonableness of a percentage-of-recovery fee award.'" *Sullivan*, 667 F.3d at 330. Counsel calculated the recovery at $243,474.00 if they were to have billed hourly for services in connections with this case. (Gyandoh Declaration ¶ 36.) Therefore, the percentage-based recovery is well below the hourly rate that Counsel would have charged to handle this matter.

## 2. Award to Named Plaintiffs as Class Representatives:

Named Plaintiffs Ramon Diaz and Candace Agate are appointed as Class Representatives. Each Class Representative now seeks a $10,000.00 service award for a total award of $20,000.00 to which there is no objection from the Proposed Class. "The approval of contribution or incentive awards is common, especially when the settlement establishes a common fund." *In re CertainTeed Fiber Cement Siding Litig.,* No. MDL 2270, 303 F.R.D. 199, 225 (E.D. Pa. March 20, 2014) ("'The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws.'").

Class Representatives have expended substantial time and effort on this litigation. They sought counsel to assist them (and other Class Members) in initiating this lawsuit and enforcing

15

their rights against the Plan. Throughout the litigation, they provided relevant documents, responded to discovery, reviewed pleadings, met with Class Counsel and were responsive by phone and email. (Diaz Declaration ¶¶ 7-8, ECF NO. 50-4; Agate Declaration ¶¶ 7-8; 50-5.) Under these circumstances, the $10,000.00 service award to each named Class Representative is reasonable and warranted. *In re Linerboard Antitrust Litig.,* No. MDL 1261, 2004 U.S. Dist. LEXIS 10522, at *56 (E.D. Pa. June 2, 2004) ("[T]he amount requested, $25,000.00 is comparable to incentive awards granted by courts in this district and in other circuits.").

## IV. CONCLUSION:

For these reasons, Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees and Reimbursement of Expenses and Lead Plaintiff Case Contribution Award will be granted. Appropriate Orders will be entered.

BY THE COURT:

   /s/ John Milton Younge
Judge John Milton Younge

---

[1] In 2018 there were 856 participants with account balances in the Plan. (Gyandoh Declaration ¶ 14, ECF No. 44-2.) Mailings were sent to 1,555 Settlement Class members. (Keough Declaration ¶ 7, ECF No. 50-3.) In reference to the 1,555 notices that were mailed to Settlement Class Members, 48 Notices were returned as undeliverable. (*Id.* ¶¶ 9-10.)

[2] According to the 2018 Form 5500 submissions for the Plan, as of December 31, 2018, the Plan had 915 participants with account balances. Moreover, JND determined there are 1,555 unique Settlement Class members of record. (Keough Decl., ¶ 5.)

---

<sup>3</sup> "Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000). Here, Class Members whose injury exceeds $10.00 will receive a pro rata share after attorneys' fees, costs and expenses. Accordingly, the Settlement will be distributed to each Class Member based on the extent of his or her losses as a result of the liquidation. The Allocation Plan thus is fair, reasonable, and adequate. *See Mehling*, 248 F.R.D. at 463 ("Generally, a plan that reimburses class members based on the nature and extent of their injuries is considered reasonable.").

<sup>4</sup> Rule 23(e)(2), in turn, now codifies factors to be considered in determining whether a settlement merits final approval:
(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e) proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).